2016-2622 (LEAD)
2017-1092 (CONSOLIDATED CROSS-APPEAL)

———————————————

# UNITED STATES COURT OF APPEALS
# FOR THE FEDERAL CIRCUIT

———————————————

## EMMANUEL C. GONZALEZ,
*Plaintiff–Appellant*

v.

## NEW LIFE VENTURES, INC.
*Defendant–Cross-Appellant*

———————————————

Appeal from the United States District Court
for the Eastern District of Texas
in Nos. 2:14-cv-00906-JRG; 2:14-cv-00907-JRG
Judge J. Rodney Gilstrap

———————————————

## PLAINTIFF–APPELLANT EMMANUEL C. GONZALEZ' CORRECTED OPENING BRIEF

———————————————

M. Scott Fuller
Paul D. Lein
**LOCKE LORD LLP**
2200 Ross Avenue, Suite 2800
Dallas, Texas 75201-6776
Telephone: (214) 740-8000
Facsimile: (214) 740-8800

*Attorneys for Plaintiff – Appellant*
*Emmanuel C. Gonzalez*

# CERTIFICATE OF INTEREST

Pursuant to Federal Circuit Rules 27(a)(7) and 47.4(a), counsel for Plaintiff-Appellant Emmanuel C. Gonzalez hereby certifies the following:

1.     The full name of every party or amicus represented by me is: Emmanuel C. Gonzalez, an individual resident of the Philippines.

2.     The name of the real party in interest (if the real party named in the caption is not the real party in interest) represented by me is:  N/A.

3.     All parent corporations and any publicly held companies that own 10 percent or more of the stock of the party represented by me are:  N/A.

4.     The names of all firms and the partners or associates that appeared for the party or amicus now represented by me in the trial court or agency or are expected to appear in this court are:  Locke Lord LLP: M. Scott Fuller; Paul D. Lein; Jason E. Mueller; and Darrian L. Campbell.

Dated:  December 22, 2016                    Respectfully submitted,

                                         */s/   M. Scott Fuller*
                                        M. Scott Fuller
                                        Paul D. Lein
                                         **LOCKE LORD LLP**
                                         2200 Ross Avenue, Suite 2800
                                         Dallas, Texas  75201-6776
                                         Telephone:  (214) 740-8000
                                         Facsimile:  (214) 740-8800
                                         **ATTORNEYS FOR PLAINTIFF**
                                         **EMMANUEL C. GONZALEZ**

# TABLE OF CONTENTS

**Page**

CERTIFICATE OF INTEREST .................................................................... ii

TABLE OF CONTENTS.......................................................................... iii

TABLE OF AUTHORITIES .......................................................................v

STATEMENT OF RELATED CASES ....................................................1

STATEMENT OF JURISDICTION........................................................2

STATEMENT OF THE ISSUE................................................................3

STATEMENT OF THE CASE.................................................................3

STATEMENT OF FACTS .........................................................................4

**A.**    BACKGROUND OF THE GONZALEZ PATENTS ....................5

    1.    Prior Art Search Systems ........................................................5

    2.    The Gonzalez Digital Label and Search System..................8

**B.**    THE ASSERTED CLAIMS .........................................................10

**C.**    THE DISTRICT COURT'S CLAIM CONSTRUCTION ORDER..............13

**D.**    THE ORDER ON SUMMARY JUDGMENT.............................14

SUMMARY OF THE ARGUMENT .....................................................15

STANDARD OF REVIEW ....................................................................16

ARGUMENT .........................................................................................17

**A.**    THE ASSERTED CLAIMS ARE NOT DIRECTED TO ABSTRACT
      IDEAS...........................................................................................19

    1.    Claims Are Directed to Specific Technological
         Improvement .......................................................................20

    2.    Claims Are Not Entirely Functional .................................22

3.    Claims Solve Challenge Particular to the Internet ..............................23

4.    No Preemption Concern ....................................................................24

**B.**    ASSERTED CLAIMS CONTAIN INVENTIVE CONCEPTS....................26

**C.**    DISTRICT COURT FAILED TO CONSIDER THE MOST
PERTINENT CASES ..................................................................................27

CONCLUSION ........................................................................................................30

CERTIFICATE OF SERVICE ..................................................................................1

CERTIFICATE OF COMPLIANCE.........................................................................2

# TABLE OF AUTHORITIES

**Cases**                                                                **Page(s)**

*Affinity Labs. of Texas LLC v. DirecTV LLC*,
  --- F.3d ---, 2016 WL 5335501 (Fed. Cir., Sept. 23, 2016)..........................22, 23

*In re Alappat*,
  33 F.3d 1526 (Fed. Cir. 1994) (abrogated on other grounds)............................19

*Alice Corp. Pty. Ltd. v. CLS Bank Int'l*,
  134 S. Ct. 2347 (2014).....................................................................17, 18, 20, 25

*Amdocs Ltd. v. Openet Telecom, Inc.*,
  --- F.3d ---, 2016 WL 6440387 ............................................................17, 26, 30

*Anderson v. Liberty Lobby, Inc.*,
  477 U.S. 242, 106 S. Ct. 2505, 91 L.Ed.2d 202 (1986) ....................................17

*Bascom Global v. AT&T Mobility LLC*,
  827 F.3d 1341 (Fed. Cir. 2016) ............................................................23, 26, 27

*Bilski v. Kappos*,
  561 U.S. 593 (2010)..........................................................................................19

*CLS Bank Int'l v. Alice Corp. Pty. Ltd.*,
  717 F.3d 1269 (Fed. Cir. 2013) (en banc), *aff'd* 134 S. Ct. 2347
  (2014) ................................................................................................................25

*David Netzer Consult. Eng. LLC v. Shell Oil Co.*,
  824 F.3d 989 (Fed. Cir. 2016) ....................................................................16, 17

*DDR Holdings, LLC v. Hotels.com*,
  773 F.3d 1245 (Fed. Cir. 2014) ..................................................................19, 23

*Diamond v. Chakrabarty*,
  447 U.S. 303 (1980)..........................................................................................17

*eDekka v. 3balls.com*,
  2015 WL 5579840 (E.D. Tex., Sept. 21, 2015).................................................28

*Enfish, LLC v. Microsoft Corp.*,
    822 F.3d 1327 (Fed. Cir. 2016) ...................................................21, 22, 27, 29, 30

*Mayo Collaborative Servs. v. Prometheus Labs., Inc.*,
    132 S. Ct. 1289 (2012)...................................................................................18

*McRO, Inc. v. Bandai Namco Games Amer., Inc.*,
    --- F.3d ---, 2016 WL 4896481 (Fed. Cir., Sept. 13, 2016)....................21, 25, 29

*MemoryLink Corp. v. Motorola Sols., Inc.*,
    773 F.3d 1266 (Fed. Cir. 2014) .........................................................................16

*Rapid Litigation Mgmt. Ltd. v. CellzDirect, Inc.*,
    827 F.3d 1042 (Fed. Cir. 2016) ...............................................................16, 17, 20

*Research Corp. Techs. v. Microsoft Corp.*,
    627 F.3d 859 (Fed. Cir. 2010) ...........................................................................19

*Ultramercial Inc. v. Hulu LLC*,
    722 F.3d 1335 (Fed. Cir. 2013) .........................................................................18

*United States v. Caremark, Inc.*,
    634 F.3d 808 (5th Cir. 2011) .............................................................................16

## Statutes and Rules

28 U.S.C. § 1295(a)(1)...........................................................................................2

28 U.S.C. §§ 1331, 1332(a)(2), and 1338(a) .........................................................2

35 U.S.C. § 1 *et seq.*.............................................................................................2

35 U.S.C. § 101 ..................................................... 2, 3, 4, 14, 17, 18, 19, 20, 23, 25

35 U.S.C. §§ 271, 281, 283, 284, and 285 .............................................................2

FED. R. CIV. P. 56(a).............................................................................................17

## Other References

U.S. Patent No. 7,873,665........................................................................3, 4, 5

U.S. Patent No. 7,558,807........................................................................3, 4, 5

U.S. Patent No. 8,296,325 ............................................................................ 6

U.S. Patent No. 7,647,339 ............................................................................ 6

U.S. Patent No. 5,778,367 ............................................................................ 6

U.S. Patent No. 6,175,830 ............................................................................ 6

U.S. Patent No. 6,223,145 ............................................................................ 6

U.S. Patent No. 5,905,862 ............................................................................ 6

U.S. Patent No. 6,718,365 ............................................................................ 6

U.S. Patent No. 6,275,821 ............................................................................ 6

U.S. Patent No. 2002/0035611 .................................................................... 6

## STATEMENT OF RELATED CASES

In accordance with Federal Circuit Rule 47.5, counsel for Plaintiff-Appellant Emmanuel C. Gonzalez states:

1. There are no, nor have there been, any other appeals in or from this same civil action or proceeding in the lower court before this or any other appellate court.

2. The relevant patent claims are also the subject of a Cross-Appeal filed by Cross-Appellant New Life Ventures, Inc.  That appeal has been assigned Case No. 2017-1092, and has been consolidated with the instant Lead Appeal.

## STATEMENT OF JURISDICTION

The district court for the Eastern District of Texas had jurisdiction under 28 U.S.C. §§ 1331, 1332(a)(2), and 1338(a).  The underlying action arose under the Patent Laws of the United States, and specifically 35 U.S.C. § 1 *et seq.*, including specifically at least 35 U.S.C. §§ 271, 281, 283, 284, and 285.  [Joint Appendix at Appx680-681].

Following a four day trial at the district court, Gonzalez earned a jury verdict of valid and infringed against Defendant New Life Ventures, Inc., on February 11, 2016.  Thereafter, on April 26, 2016, the district court below granted New Life Ventures' Motion for Summary Judgment of Invalidity under 35 U.S.C. § 101 [*see* Appx4-12], and further Vacated the Magistrate Judge's Report and Recommendation in which the claims at issue were found to recite patentable subject matter [*see* Appx13-14 and Appx66-76].   Subsequently, the district court denied Gonzalez' Motion for Reconsideration [*see* Appx15-16], and entered Final Judgment on October 5, 2016 [*see* Appx1-3].

On September 9, 2016, Gonzalez filed his Notice of Appeal to this Court [*see* Appx845-847], appealing the final judgment of invalidity.  This Court has jurisdiction under 28 U.S.C. § 1295(a)(1).

## STATEMENT OF THE ISSUE

1.    Did the district court err in granting Defendant New Life Ventures' motion for summary judgment of invalidity of claims 1, 42, and 53 of U.S. Patent No. 7,873,665 ("the '665 Patent") and claims 1, 2, and 3 of U.S. Patent No. 7,558,807 ("the '807 Patent) (collectively the "Asserted Claims") under 35 U.S.C. § 101?

## STATEMENT OF THE CASE

On September 23, 2014, Gonzalez filed suit in the Eastern District of Texas against Defendant New Life Ventures, Inc. ("New Life") for infringement of five total asserted patents issued to the plaintiff and sole inventor, Mr. Emmanuel C. Gonzalez.  [Appx680-691].  New Life filed an Answer and Counterclaims in which it denied the allegations of the Complaint and sought declarations of non-infringement and invalidity.  [Appx849-858].

On September 21, 2015, the district court entered its Memorandum Opinion and Order in which it construed the contested terms of the asserted claims. [Appx22-65].  The parties thereafter completed fact discovery, exchanged expert reports, and a jury trial was conducted from February 8-11, 2016.  On February 11, 2016, the jury arrived at its unanimous verdict that the Asserted Claims are valid and infringed by New Life.  [Appx114-119].

3

On January 27, 2016, New Life filed its Motion for Summary Judgment of Invalidity under 35 U.S.C. § 101. [*See* Appx859-883].  On February 6, 2016, Magistrate Judge Roy S. Payne issued his Report and Recommendation, in which he determined the Asserted Claims satisfied both prongs of the *Alice/Mayo* test, and are therefore patentable under 35 U.S.C. § 101 [*see* Appx66-76].  Thereafter, on April 26, 2016, the district court granted New Life Ventures' Motion for Summary Judgment of Invalidity [*see* Appx4-12], and Vacated the Magistrate Judge's Report and Recommendation [Appx13-14].  Subsequently, the district court denied Gonzalez' Motion for Reconsideration [*see* Appx15-16], and entered Final Judgment on October 5, 2016 [*see* Appx1-3].

## STATEMENT OF FACTS

The Plaintiff-Appellant is the sole inventor of the five originally-asserted patents in the underlying litigation.  [Appx680-691].  After narrowing issues through discovery, the two finally asserted patents were U.S. 7,558,807 and 7,873,665 (together the "Asserted Patents") and, more specifically, claims 1, 42, and 53 of the '665 Patent, and claims 1, 2, and 3 of the '807 Patent (collectively the "Asserted Claims").  [Appx114-119].  The Asserted Patents each share a common specification, with the exception of certain disclosed Alternative Embodiments in the '665 Patent.  [Appx148-150 at 19:24–23:26].

The '807 Patent issued on July 7, 2009, while the '665 Patent issued on January 18, 2011. Each Asserted Patent claims priority to an original Provisional Application, which was filed on October 4, 2000. [Appx408 at 1:5-9; Appx139 at 1:5-9].

## A.    BACKGROUND OF THE GONZALEZ PATENTS

### 1.    Prior Art Search Systems

The specification explains how, prior to the digital labeling invention of the Asserted Gonzalez Patents, an Internet search engine would receive a user-inputted word or phrase, and then proceed to "read" vast numbers of sites, looking for word or phrase matches. [Appx408 at 1:53-55]. However, word matches naturally only give clues as to the nature of a website, not unambiguous information about the website or its publisher. [*Id.* at 1:56-58]. As a result, while word-searches would generally yield a large number of "matches," many of those were not at all relevant to what the user was actually searching for. [*Id.* at 1:58-59].

A user would thus have to manually open each website in the search result in order to confirm the relevance of a returned website. Due to the limitations with conventional search engines at the time of the invention, the need for a means of accurately identifying websites with content relevant to what a user was searching for was pervasive. Indeed, the prior art is littered with examples of others who were trying to solve the exact same problem.

For example, several of the very prior art references cited during prosecution of the Gonzalez Patents recognize the need solved by Gonzalez. *See, e.g.,* U.S. 5,778,367 Wesinger, column 2 (discussing the limited control of a website owner over search listings, frequently resulting in the page listed under the wrong category); U.S. 6,175,830 Maynard, column 1 (recognizes the fault in the then-existing word search method and that a word may have several different meanings); U.S. 6,223,145 Hearst, columns 1-2 (discussing the Yahoo categorical listings, and the problems associated with that structure, namely, the inability to combine search subjects and rigidity); U.S. 5,905,862 Hoekstra, columns 1-2 (discussing the vast size and decentralized nature of the Internet, the difficulty in locating web sites relating to a particular subject, and the difficulty for search engines to maintain an up-to-date database of existing web sites); U.S. 6,718,365 Dutta, columns 1-2 (discussing the common problem of non-relevant search results, and algorithms to rank search results according to popularity); U.S. 6,275,821 Danish, columns 1-3 (explaining the deficiencies in Boolean logic keyword searches and hierarchical searches); U.S. 2002/0035611 Dooley, columns 1-2 (also discussing algorithms that identify desirable features within websites to increase likelihood of high level placement in a search). [*See* Appx122, Appx391, Appx1004, and Appx1035 at References Cited].

That is, prior to the Asserted Gonzalez Patents, most, if not all, Internet searches were either text-based keyword searches or tree-based hierarchical or category searches.  This inevitably returned many non-relevant matches in addition to sparse relevant matches, which resulted in a frustrating user experience when attempting to locate useful content over the Internet.

The specification teaches that later refinements to search engines, such as frequency or prominence weighting, or counting linkage to a given site, did not significantly improve the quality of search results.  [Appx408 at 1:61-64].  As a result, most search engines of the prior art era began supplementing their computerized word-matching searches with human research and judgment.  [*Id.* at 2:8-11].  That is, a person working for a search engine provider would manually review search results to determine whether the desired relevance in hits was being achieved, or if certain search results needed to be removed from the list.  But given that new websites proliferate at an ever increasing rate, and with tens of millions of websites already available even prior to the Gonzalez invention, the continued reliance on simple word-match technology and human review for search engine optimization would virtually guarantee that the overwhelming majority of Internet websites would not be reliably found by their intended audiences.  [*Id.* at 2:31-37].  As taught by the specification, there was a need for a technical solution that did not rely upon manual review of search results or upon improved word-matching

algorithms, but would instead perform searches based on the qualitative characteristics for a given website which would inherently provide more accurate, fully customizable and relevant searches. The focus of the Gonzalez invention was thus not on making the search engine more intelligent, but instead upon making the job of the search engine fundamentally easier to do. [*Id.* at 2:40-47].

### 2.    The Gonzalez Digital Label and Search System

The digital label-based concept taught by the Asserted Patents was the innovative solution to the problem of non-relevant search results yielded by prior art Internet search systems. The Gonzalez concept further ensured that responsive results positively would appear from a relevant search. In sum, the Gonzalez approach made it possible for users to identify all of the websites they were looking for, and *only* those websites.

Rather than performing ambiguous keyword searches or searches through a rigid category tree listing based on the data itself, the Asserted Patents teach the sourcing of unambiguous qualitative data about a website directly from its creator and then encoding or converting that data into digital labels. [Appx409 at 3:13-22]. As set forth by the District Court's Claim Construction Order, the claimed digital labels are "something symbolic of unambiguous qualitative data about an item, its maker, or its owner, in digital form." [Appx40 at 18]. Importantly, the digital labels uniquely refer to and represent a particular item of qualitative data.

8

[*See* Appx417 at claims 1 and 3; Appx150 at claim 1]. Thus, when searches are performed utilizing the digital labels, a searcher can be certain that the search results are relevant to what the searcher is looking for, and provides far more accurate results because each digital label uniquely refers to a particular piece of qualitative data.

Additionally, given the highly manipulable nature of the digital labels, a searcher can run searches according to any configuration of the digital labels. [Appx150 at claim 1]. By allowing searches based on any number of configurations based on the digital labels, a searcher was not relegated to searching only within a single category or subject at a time, thereby completely changing the manner in which a searcher could perform searches.

The Gonzalez method overcame very real technical problems existing at the time of the invention, including the problem of far too many irrelevant search results, and the problem of inflexible directory tree structures. In so doing, Gonzalez conceived of a solution that completely modified the search approach, focusing not on the search engine, but rather on the search targets: the websites themselves. [*See* Appx408 at 2:40-47 ("The focus [of the prior art] has been on making search engines more and more intelligent, in the hope that they could do their job better. Similarly, medieval monasteries tried to train faster book copiers, and early automobile companies competed for the best mechanics. The focus

9

instead should have been on making the job fundamentally easier to do. This is what Gutenberg did when he invented moveable type, and Henry Ford, when he invented the assembly line")]. Indeed, the Gonzalez method represented a paradigm shift in the online user experience; instead of keying in search words into an empty box, users could perform pinpoint searches for, or based on, digital labels.

## B.    THE ASSERTED CLAIMS

Consistent with the disclosures of the Asserted Patents, the Asserted Claims are directed to systems and methods for resolving the stated Internet-centric problem: Imprecise searching yielding largely irrelevant search results.

Claim 1 of the '807 Patent provides:

1.    A host website apparatus for listing subscribers comprising:

a computer system,

said computer system includes a digital label database for providing to a listing subscriber digital labels representing different specific qualities and a subscriber database for storing a listing of subscribers' digital labels;

said computer system being configured to respond to a subscriber's request for listing and guiding the subscriber via the Host Website display to enter information pertaining to the subscriber and converting the information to digital labels by accessing said digital label database and storing the subscriber's digital labels in said subscriber database; and

10

    said computer system further configured to enable users to search said subscriber database for subscriber digital labels identifying subscriber qualities.

   [Appx417 at Claim 1].

  Dependent Claim 2 of the '807 Patent provides that the website of Claim 1 "is configured for a specific subject."  [*Id.* at Claim 2].  Independent Claim 3 of the '807 Patent provides:

   3. A method for listing websites on the Internet comprising the steps of:

    configuring a computer system to compile a digital label database for providing to a listing subscriber digital labels representing different specific qualities and to compile a subscriber database for storing a listing of subscribers' digital labels;

    configuring said computer system to respond to a subscriber's request for listing;

    guiding the subscriber via a website display to enter information pertaining to the subscriber; and

    conve[rt]ing the information to digital labels by accessing said digital label database and storing subscriber digital labels in Host Website databases.

   [*Id.* at Claim 3].

  The "convening" term in the final limitation of Claim 3 was corrected to the term "converting" via a Certificate of Correction filed by Gonzalez on December 16, 2013, and corrected on February 14, 2014.  [Appx418].

  Claim 1 of the '665 Patent provides:

1.    A method for multi-parameter digital labelling of Internet Websites, comprising:

> gathering of unambiguous, multi-parameter qualitative data concerning a single or a plurality of at least one of an Internet website, an Internet posting, their substantive contents, and their owner or creator;

> sourcing, from the owner or creator of said website or Internet posting, each said item of qualitative data referring to said website, said internet posting, or its substantive contents or its owner or creator;

> producing a plurality of digital labels for each said website or internet posting, wherein each digital label uniquely refers to and represents a particular item of qualitative information;

> wherein producing of digital labels further comprises encoding of the qualitative data in any digital form;

> domiciling of these multi-parameter digital labels on at least one of the same computer, the same computer network, and on several computers linked to each other;

> manipulation of the said multi-parameter digital labels comprising generation of a list of at least one of websites and Internet postings that match parameters stipulated by an entity conducting a search and represented in the digital labels according to at least one of the presence of, the absence of, the numerical or other value contained in, the numerical or other value not contained in, any one, all, and any configuration of the labels that have reference to one or more websites or Internet postings; and

> making available the effective use of these multi-parameter digital labels and the means for their manipulation, to the general public through the Internet.

> [Appx150 at Claim 1].

Dependent Claim 42 of the '665 Patent provides that the creator of the website in Claim 1 "is the owner or administrator of the website, and is provided with access to edit or modify the website or the labels associated with the website." [Appx152 at Claim 42].

Dependent Claim 53 of the '665 Patent provides that the information encoded in a single label in Claim 1 "refers to at least one of a warranty that applies to a product for sale, … the age of a person or the year of his/her birth, … a person's ethnic origin or ethnicity, … the income or wealth of a person, …" or a number of other personal parameters.  [*Id.* at Claim 53].

## C.    THE DISTRICT COURT'S CLAIM CONSTRUCTION ORDER

The district court construed the following terms, which appear in the Asserted Claims:

1.    "label" is: "something symbolic of unambiguous qualitative data about an item, its maker, or its owner."  [Appx32-40].

2.    "digital label" is: "something symbolic of unambiguous qualitative data about an item, its maker, or its owner, in digital form."  [*Id.*].

All other terms appearing in the Asserted Claims were assigned their respective plain and ordinary meanings.

**D.    THE ORDER ON SUMMARY JUDGMENT**

On January 27, 2016, Defendant New Life filed its Motion for Summary Judgment of Invalidity under 35 U.S.C. § 101. [*See* Appx860-883].   Then, on February 6, 2016, Magistrate Judge Roy Payne issued his Report and Recommendation in which the claims at issue were found to recite patentable subject matter, and the Motion for Summary Judgment was recommended to be Denied.   [*See* Appx66-76].   In his Report and Recommendation, Judge Payne found the Asserted Claims were not directed to an "abstract idea," in view of the facts that labels are produced and because "guiding" the user was a specific, concrete implementation.   [Appx73-75].   Although he had already determined that the Asserted Claims passed muster under *Alice/Mayo* Step One, he nevertheless continued with an assessment under Step Two.   There, Judge Payne determined again that the Asserted Claims were eligible for patent protection, in part because they improve the function of a computer, and otherwise because they are directed to solving an Internet-centric problem.   [Appx75].

Thereafter, on April 26, 2016, the district court below granted New Life Ventures' Motion for Summary Judgment, and further Vacated the Magistrate Judge's Report and Recommendation. [*See* Appx13-14 and Appx66-76]. Subsequently, the district court denied Gonzalez' Motion for Reconsideration [*see* Appx15-16], and entered Final Judgment on October 5, 2016 [*see* Appx1-3].

14

## SUMMARY OF THE ARGUMENT

The district court erred in its conclusion that the Asserted Claims are directed to patent-ineligible subject matter. In reaching its conclusion, the district court committed a number of significant errors, including failing to appreciate the technological nature of the problem solved by the patents and the advancement the patent achieves over the prior art, oversimplifying the Asserted Claims in order to derive an erroneous statement of abstraction, failing to recognize meaningful claim limitations, failing to consider preemption, and failing to properly apply this Court's directly relevant prior case law.

The district court's judgment should be reversed as to all of the Asserted Claims. Each such claim is directed to solving the specific technological and Internet-centric problem of imprecise searching yielding largely irrelevant search results. As such, the claims represent a marked improvement over then-existing search protocols, with concomitant improvements in the functioning of computers themselves as useful technological tools. The Asserted Claims specifically describe and are limited in scope to a particular solution, rather than to the mere implementation of a longstanding commercial activity on the Internet. In sum, the Asserted Claims confronted and overcame a glaring, known deficiency in the technological art by reversing the manner in which unambiguous, qualitative data

is collected, and then converting that data into manipulable symbols for exacting searches.  There is nothing "abstract" about these important Asserted Claims.

Moreover, the elements of the various Asserted Claims, both alone and in combination, contain inventive concepts sufficient for basic subject matter eligibility.

## STANDARD OF REVIEW

This Court reviews a grant of summary judgment under the law of the regional circuit; here, the Fifth Circuit.  *Rapid Litigation Mgmt. Ltd. v. CellzDirect, Inc.,* 827 F.3d 1042, 1046-47 (Fed. Cir. 2016) (citing *MemoryLink Corp. v. Motorola Sols., Inc.,* 773 F.3d 1266, 1270 (Fed. Cir. 2014)).  The Fifth Circuit reviews a district court's summary judgment decision *de novo*, applying the same standard used by the district court.  *David Netzer Consult. Eng. LLC v. Shell Oil Co.,* 824 F.3d 989, 993 (Fed. Cir. 2016) (citing *United States v. Caremark, Inc.,* 634 F.3d 808, 814 (5th Cir. 2011)).  Summary judgment is appropriate when, drawing all justifiable inferences in the non-movant's favor, there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law.  *Id.* (citing Fed. R. Civ. P. 56(a); *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 247-48, 106 S. Ct. 2505, 91 L.Ed.2d 202 (1986)).

The issue of patent-eligibility under 35 U.S.C. § 101 is a question of law that this Court reviews without deference.  *Rapid Litig. Mgmt.,* 827 F.3d at 1047.

# ARGUMENT

As this Court is of course well aware, § 101 of the Patent Act defines the subject matter eligible for patent protection:

> Whoever invents or discovers any new and useful process, machine, manufacture, or composition of matter, or any new and useful improvement thereof, may obtain a patent therefor, subject to the conditions and requirements of this title.

35 U.S.C. § 101. "It is obvious that the subject matter described in § 101 is expansive. As the Supreme Court has observed, the subject-matter provisions of the patent law have been cast in broad terms to fulfill the constitutional and statutory goal of promoting the Progress of Science and the useful Arts." *Amdocs Ltd. v. Openet Telecom, Inc.,* --- F.3d ---, 2016 WL 6440387 at *3. The Supreme Court has held § 101 to exclude patents which claim laws of nature, physical phenomena, and abstract ideas. *See, e.g., Diamond v. Chakrabarty,* 447 U.S. 303, 309 (1980); *Alice Corp. Pty. Ltd. v. CLS Bank Int'l,* 134 S. Ct. 2347, 2354 (2014).

In *Alice*, the Supreme Court reiterated that patent eligibility under § 101 is evaluated using a two-part test. *Alice,* 134 S. Ct. at 2355 (citing *Mayo Collaborative Servs. v. Prometheus Labs., Inc.,* 132 S. Ct. 1289 (2012)). First, a court must determine "whether the claims at issue are directed to a patent-ineligible concept." *Id.* Second, only if it is determined that the claim is directed to an ineligible concept, does the court "consider the elements of each claim both individually and 'as an ordered combination' to determine whether the additional

17

elements 'transform the nature of the claim' into a patent-eligible application." *Id.* The Court described this second step as a search for an "inventive concept" – *i.e.,* an element or combination of elements that is "sufficient to ensure that the patent in practice amounts to significantly more than a patent upon the ineligible concept itself." *Id.* Regarding the patent eligibility analysis, the Supreme Court specifically warned that "[A]ll inventions at some level embody, use, reflect, rest upon, or apply laws of nature, natural phenomena, or abstract ideas." *Id.* at 2354.

This same concept has been similarly stated by this Court:

> The Court has long-recognized that any claim can be stripped down, simplified, generalized, or paraphrased to remove all of its concrete limitations, until at its core, something that could be characterized as an abstract idea is revealed.

*Ultramercial Inc. v. Hulu LLC,* 722 F.3d 1335, 1344 (Fed. Cir. 2013).

Moreover, an invention is not directed to an abstract idea merely because it is implemented by a computer. *See Alice,* 134 S. Ct. at 2358-59 (2014) ("There is no dispute that a computer is a tangible system (in § 101 terms, a "machine"), or that many computer-implemented claims are formally addressed to patent-eligible subject matter.); *Bilski v. Kappos,* 561 U.S. 593 (2010); *Research Corp. Techs. v. Microsoft Corp.,* 627 F.3d 859 (Fed. Cir. 2010); *In re Alappat,* 33 F.3d 1526, 1545 (Fed. Cir. 1994) (abrogated on other grounds) ("a computer operating pursuant to software may represent patentable subject matter, provided, of course, that the claimed subject matter meets all of the other requirements of Title 35.").

18

Regarding the second step, to determine whether the nature of a claim is transformed into a patent-eligible application, the Court may consider whether the claim is "tied to a particular machine or apparatus" or "transforms a particular article into a different state or thing." *Bilski v. Kappos,* 561 U.S. 593, 602-06 (2010). The Court should also consider whether "the claimed solution is necessarily rooted in computer technology in order to overcome a problem specifically arising in the realm of computer networks." *DDR Holdings, LLC v. Hotels.com,* 773 F.3d 1245, 1257 (Fed. Cir. 2014).

Overall, to find a claim invalid as abstract, the abstractness must "exhibit itself so manifestly as to override the broad statutory categories of eligible subject matter and the statutory context that directs primary attention on the patentability criteria of the rest of the Patent Act." *Research Corp. Techs. v. Microsoft Corp.,* 627 F.3d 859, 868 (Fed. Cir. 2010). This is because the Supreme Court acknowledged that the concern that drives the exclusionary principle under Section 101 as one of pre-emption. *Alice,* 134 S. Ct. at 2354. At the same time, the Supreme Court cautioned that the "exclusionary principle" of unpatentable subject matter must be construed carefully "lest it swallow all of patent law." *Id.*

## A. THE ASSERTED CLAIMS ARE NOT DIRECTED TO ABSTRACT IDEAS

Without elaboration or explanation, the district court determined that the Asserted Claims "are directed to the abstract idea of gathering and labeling

information to facilitate efficient retrieval of the labeled information," and moved on to "assess" the Asserted Claims under Step Two of the *Alice* framework. [Appx10-12]. In so doing, the district court failed to consider whether its stated "abstract idea" was abstract at all, and failed to consider the technological advancement the claims provided over the state of the art at the time of the invention.

### 1.    Claims Are Directed to Specific Technological Improvement

The initial inquiry under Step One is assessing and defining what, exactly, the claims as drafted are "directed to". *Alice,* 134 S. Ct. at 2355 ("first, we determine whether the claims at issue are directed to one of those patent-ineligible concepts"); *Rapid Litig. Mgmt.,* 827 F.3d at 1050 ("at step one, it is not enough to merely identify a patent-ineligible concept underlying the claims; we must determine whether that patent-ineligible concept is what the claims is 'directed to'"); *Enfish, LLC v. Microsoft Corp.,* 822 F.3d 1327, 1335 (Fed. Cir. 2016) ("the 'directed to' inquiry applies a stage-one filter to claims, considered in light of the specification, based on whether their character as a whole is directed to excluded subject matter")). In so doing, the Court "must be careful to avoid oversimplifying the claims by looking at them generally and failing to account for the specific requirements of the claims." *McRO, Inc. v. Bandai Namco Games Amer., Inc.,* --- F.3d ---, 2016 WL 4896481 at *7 (Fed. Cir., Sept. 13, 2016); *see also Enfish,* 822

F.3d at 1337 (cautioning against describing claims at high levels of abstraction untethered from the language of the claims).

Like the invention found patentable in *Enfish*, the Asserted Claims are not inherently abstract simply because they are directed to methods that may be implemented using existing computer technology.  Rather, the disclosure of the Asserted Patents provides a real tangible improvement with respect to how searches were performed over the Internet.  This improvement is disclosed throughout the written specification and subsumed in the claims.  [*See, e.g.,* Appx409 at 3:13-22 (teach the sourcing of unambiguous qualitative data about a website directly from its creator and then encoding or converting that data into digital labels); Appx417 at claims 1, 3 (digital labels uniquely refer to and represent a particular item of qualitative data); Appx150 at claim 1 (a searcher can run searches according to any configuration of the digital labels using the highly manipulable nature of the digital labels)].  Also provided in the specification of the Asserted Patents is the clear disparagement of prior art keyword searches and directory trees.  [*See* Appx409 at 4:16-18 ("All existing search technologies on the Internet are based on word-matches or "keywords", which are mere character strings of unknown significance")].  As in *Enfish*, Gonzalez's clear disclosure of tangible improvements to the search functionality of a computer combined with

disparagement of the deficiencies in prior art Internet search methods removes the Gonzalez invention from the realm of the merely abstract.

## 2.    Claims Are Not Entirely Functional

The Asserted Claims are not drafted such that they merely recite a result, thereby effectively covering any solution to an identified problem.  *See Affinity Labs. of Texas LLC v. DirecTV LLC,* --- F.3d ---, 2016 WL 5335501 at *9 (Fed. Cir., Sept. 23, 2016).   Rather, the Asserted Claims recite a specific technical solution to the stated problem of finding directly responsive, relevant information on the Internet.  [*See* Appx408 at 1:42-49, 2:5-8, 2:30-39].

By way of example, Claim 1 of the '807 Patent is an apparatus claim including a digital label database and a subscriber database, wherein the claimed system is specially and narrowly configured to provide digital labels to subscribers and walk them through the collection of unambiguous qualitative data pertaining to themselves.  The data is then converted by the claimed system into something new: a set of digital labels that are symbolic of the unambiguous qualitative data about an item, its maker, or its owner.  [Appx417 at Claim 1; Appx32-40].  Those digital labels are subsequently used as the basis for user searching.  [Appx417 at Claim 1]. Plainly, the exemplary Asserted Claim embodies a specific technical solution to the search conundrum, and is more akin to the eligible claims in *Bascom Global v.*

*AT&T Mobility LLC,* 827 F.3d 1341 (Fed. Cir. 2016) than those in *Affinity Labs.* *See Affinity Labs.,* 2016 WL 5335501 at \*9-10 (comparing claims).

### 3.    Claims Solve Challenge Particular to the Internet

As this Court has previously recognized, claimed solutions that are necessarily rooted in computer technology in order to overcome problems specifically arising in the computer realm meet the threshold patentability requirements under § 101.  *See DDR Holdings, LLC v. Hotels.com, L.P.,* 773 F.3d 1245, 1257 (Fed. Cir. 2014).  As in *DDR*, the Asserted Claims here address a dual problem unique to the Internet: getting one's online content noticed by interested parties and, on the other hand, permitting users to manipulate qualitative data so as to locate specifically the content they want.  [Appx408 at 1:42-49, 2:5-8, 2:30-39; Appx417 at Claim 1 (enabling users to search for subscriber digital labels); Appx150 at Claim 1 (enabling manipulation of digital labels according to any configuration of the labels)].

Again, the written description teaches and emphasizes the benefits of the claimed invention over the then existing methods by which information was located on the Internet; namely, word searching and categorical listing.  [*See* Appx139-143 at 2:4-8; 2:34-42; 3:42-57; 5:4-15; 7:28-29 ("[a]ll existing Internet search methods are based on word matches or listings-by-category"); 7:31–10:3].  Gonzalez, however, invented and claimed something far more powerful.  As taught

23

by Gonzalez, the implementation of multi-parameter searches, based on digital labels, is:

> …not defined solely by matching words or phrases or by broad predetermined categories (as is the case with all search engines and portals), but by qualitative characteristics such as price range, services provided or products sold, and others. An example of a multi-parameter search is one that seeks (1) a resort in a specified country, (2) with king-bedded rooms, (3) that offers both golfing and scuba-diving. This kind of search is simply beyond the scope of searches based on mere word matches or category listings.

[Appx145 at 13:65–14:8]. It is this dynamic manipulation of the digital labels, one which makes possible the pinpoint results as described in the foregoing example from the specification, at the discretion and command of the person performing the search according to their unique desires, which set Gonzalez apart. [*See* Appx140-141, Appx146 at 3:34-57 (searches in accordance with the invention are "on the basis of any configuration of digital labels," and have "a defined scope"); 5:4-15 (digital labels permit the identification and sorting of websites "according to various configurations of characteristics"); 6:6-9; 15:6-9 (digital label listings are "computer-manipulable," which greatly increases search accuracy)].

The Asserted Claims thus improve the functionality of computers as useful machines, as they can be used to accurately search for information on the Internet.

### 4.    No Preemption Concern

The concern driving the exclusionary principle against permitting the patenting of abstract ideas is one of pre-emption. *Alice Corp. Pty. Ltd. v. CLS*

*Bank Intern.,* 134 S. Ct. 2347, 2354 (2014). Accordingly, applications of even abstract concepts to new and useful ends remain patent eligible. *Id.* As this Court has previously recognized, the "preliminary question in applying the exceptions to [§ 101] is whether the claim raises § 101 abstractness concerns at all. Does the claim pose any risk of preempting an abstract idea? In most cases, the answer plainly will be no." *CLS Bank Int'l v. Alice Corp. Pty. Ltd.,* 717 F.3d 1269, 1282 (Fed. Cir. 2013) (en banc), *aff'd* 134 S. Ct. 2347 (2014). "The preemption concern arises when the claims are not directed to a specific invention and instead improperly monopolize the basic tools of scientific and technological work." *McRO,* 2016 WL 4896481 at *8 (citing *Alice,* 134 S. Ct. at 2354).

Here, the Asserted Claims are narrowly drawn to a specific implementation of a technical solution to the stated problem of finding directly responsive, relevant information on the Internet. Similar to the claims at issue in *Bascom,* 827 F.3d at 1350, and also in *Amdocs v. Openet Telecom, Inc.,* --- F.3d ---, 2016 WL 6440387 at *11 (Fed. Cir. Nov. 1, 2016), the Asserted Claims plainly do not preempt all methods of locating information on the Internet, as admittedly prior art methods such as word search and category tree listings remain free to all. Moreover, the claims each have specific limitations that do not encompass all possible solutions. For example, Claim 1 of the '807 Patent responds to a subscriber's request for listing and guides the subscriber to enter information. Alternative methods can

freely implement self-guided or offline data entry, or otherwise develop search protocols, including advanced algorithmic word searching, that do not make use of a subscriber digital label database.

## B.    ASSERTED CLAIMS CONTAIN INVENTIVE CONCEPTS

The district court erroneously determined that the Asserted Claims "offer nothing more than taking the well-known concept of labeling and applying it to the Internet." [Appx11]. The district court failed to consider the claims as ordered combinations, and performed what amounts to a novelty or obviousness assessment. This is error. *Bascom,* 827 F.3d at 1349-50. As noted, some of the important aspects of the Asserted Claims is that they make use of a digital label database and a subscriber database, and the claimed system is specially and narrowly configured to provide digital labels to subscribers and walk them through the collection of unambiguous qualitative data pertaining to themselves. The data is then converted by the claimed system into something new: a set of digital labels that are symbolic of the unambiguous qualitative data about an item, its maker, or its owner. [Appx417 at Claim 1; Appx40]. Those digital labels are subsequently used as the basis for user searching. [Appx417 at Claim 1].

The Asserted Claims should be considered in the same light as those in *Bascom,* 827 F.3d at 1350-52. Like *Bascom,* the Asserted Claims have specific application to, and constitute an improvement of, marketplace technologies in

existence at the time of the invention. Moreover, the Asserted Claims do not merely recite the abstract idea of "searching for information" along with a requirement to perform it on the Internet. Plainly, content searching on the Internet was a known activity, but the Asserted Patents describe how the particular arrangements in the claims represent a technical improvement over the prior art methods, which were repeatedly disparaged and distinguished by Gonzalez. [Appx139-145 at 1:53-57; 2:12-32; 3:42-57; 5:4-15; 6:6-21; 7:28-29; 7:48-54; 9:62–10:3; 13:58-62; 13:66–14:8 (distinguishing the common art)]; *Enfish,* 822 F.3d at 1337 ("our conclusion that the claims are directed to an improvement of an existing technology is bolstered by the specification's teachings that the claimed invention achieves other benefits over conventional databases").

## C.    DISTRICT COURT FAILED TO CONSIDER THE MOST PERTINENT CASES

The district court focused its attention on the *eDekka* case, at the apparent expense of any consideration of this Court's substantial precedent. [Appx10-11 (discussing *eDekka v. 3balls.com,* 2015 WL 5579840 (E.D. Tex., Sept. 21, 2015))]. The *eDekka* case is inapposite. First, the *eDekka* patent was directed to a general voice dictation device, yet vaguely worded to claim broad, routine information storage and retrieval techniques that were asserted against the wholly unrelated technological area of digital shopping carts. In contrast, the Asserted Gonzalez Patents describe a specific, narrowly-tailored search method particular to the

Internet, including the gathering of user denoted information, converting that information to create encoded digital labels that are symbolic of said information, and then manipulating those symbolic digital labels for a user-configured search of Internet webpages. Gonzalez's Asserted Patents were not and could not be broadly asserted outside the scope of Internet search methods, and specifically particularized Internet search methods that utilize symbolic digital labels.

Second, and contrary to the *eDekka* patent, the method steps described in the Asserted Gonzalez Claims, when read as a whole, are not routine tasks that could simply be performed by a human. Indeed, the conversion of qualitative data into digital labels that are symbolic of unambiguous qualitative data, combined with the ability to perform searches based upon limitless configurations of the encoded digital labels is something that no human could reasonably accomplish with pen and paper. And it is the combination of an Internet specific digital label database and the symbolic digital labels which allows for significantly more focused, relevant Internet searches enjoyed today.

The Asserted Claims are further analogized to those at issue in *McRO,* 2016 WL 4896481, which were directed to applying a set of rules in order to automate the process of animating speech. *McRO,* 2016 WL 4896481 at *3. Despite the fact that the claims in *McRO* comprised a set of rules to be followed by a computer, this Court nevertheless held them to be eligible for patent because they

represented an improvement in the finished product (as otherwise created by a human). *Id.* at *8. Similarly, the Asserted Claims are directed to an improved search experience, by applying digital labels to unambiguous, qualitative data.

The district court likewise failed to properly consider *Enfish,* 822 F.3d 1327. In *Enfish,* this Court began with the premise that claims must be evaluated to determine, as a threshold query, whether their character as a whole is directed to excluded subject matter. *Enfish,* 822 F.3d at 1335. Importantly, it was recognized that software can make non-abstract improvements to computer technology; thus, it is critical to determine if "the plain focus of the claims is on an improvement to computer functionality itself." *Id.* at 1336. Because the patent claims at issue in *Enfish* were directed to an improvement embodied in a self-referential table, they were deemed non-abstract. *Id.* at 1336-38. Likewise, the Asserted Claims here are directed to an improved data collection and storage/retrieval scheme, in which incoming qualitative information is converted into digital labels, which are symbolic of the original data; once created, the digital labels are used as the basis for future searches, not the original data.

The district court likewise failed to properly consider and apply the teachings of *Amdocs*, 2016 WL 6440387. The claims in *Amdocs* were directed to a technological solution (enhancing data) to a technical problem (massive record flows). *Amdocs,* 2016 WL 6440387 at *10. The claimed "enhancing" limitation

29

required otherwise generic computer components to operate in an unconventional manner, by adding new information to data in order to create better records and take advantage of a distributed architecture. *Id.* The Asserted Gonzalez Claims similarly modify data (by converting the data into digital labels) in the context of a particularized architecture (*e.g.,* digital label database, subscriber database, configured to provide labels, respond to a request for listing, convert the data, and facilitate digital label searches). Further, the Gonzalez Asserted Claims specifically enhance data (by converting to digital labels) in order to overcome the technical problem uniquely associated with the Internet: massive amounts of data to sort for relevance in response to a specific search.

## CONCLUSION

The Asserted Claims should be declared directed to patent-eligible subject matter under 35 U.S.C. § 101. The district court's Order Granting Summary Judgment of Invalidity under § 101 should be reversed. This matter should be remanded back to the district court for purposes of reinstating the jury verdict and assessing issues relating to damages, fees and costs, including but not limited to an award of costs and/or fees to Gonzalez as the prevailing party, and vacating any prior orders awarding fees and/or costs to New Life as the former prevailing party.

Dated:  December 22, 2016                    Respectfully submitted,

                                              /s/  *M. Scott Fuller*
                                             M. Scott Fuller
                                             Paul D. Lein
                                             **LOCKE LORD LLP**
                                             2200 Ross Avenue, Suite 2800
                                             Dallas, Texas  75201-6776
                                             Telephone:  (214) 740-8000
                                             Facsimile:  (214) 740-8800

                                             **ATTORNEYS FOR PLAINTIFF
                                             EMMANUEL C. GONZALEZ**

## CERTIFICATE OF SERVICE

I hereby certify that I filed the foregoing Plaintiff-Appellant Emmanuel C. Gonazlez' Corrected Opening Brief with the Clerk of the United States Court of Appeals for the Federal Circuit via the CM/ECF system on this 22nd day of December, and served a copy on counsel of record for Defendant–Appellee by the CM/ECF system and by electronic mail as follows:

Nicholas A. Brown, at brown@gtlaw.com

Stephen M. Ullmer, at ullmers@gtlaw.com


*/s/ M. Scott Fuller*
M. Scott Fuller

## CERTIFICATE OF COMPLIANCE

Pursuant to Fed. R. App. P. 32(a)(7)(C), the undersigned hereby certifies that this brief complies with the type-volume limitation of Fed. R. App. P. 32(a)(7)(B)(i).

1.    Exclusive of the exempted portions of the brief, as provided in Fed. R. App. P. 32(a)(7)(B), the brief contains 6,674 words.

2.    The brief has been prepared in a proportionally spaced typeface using Microsoft Word 2010 in 14 point Times New Roman font.  As permitted by Fed. R. App. P. 32(a)(7)(B), the undersigned has relied upon the word count feature of this word processing system in preparing this certificate.

Dated:  December 22, 2016                Respectfully submitted,

                                          /s/   *M. Scott Fuller*
                                        M. Scott Fuller

                                        **ATTORNEY FOR PLAINTIFF**
                                        **EMMANUEL C. GONZALEZ**